*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY LARRANCE LEACH,

        Defendant-Appellant.

UNPUBLISHED
January 28, 2020

No. 348608
Wayne Circuit Court
LC No. 18-007699-01-FH

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as on leave granted[1] the circuit court's order denying his motion to quash the charges of tampering with evidence, MCL 750.483, and engaging as a security guard without a license, MCL 338.1053. Defendant was also bound over on charges of aggravated assault, MCL 750.81a, and willful neglect of duty as a public officer, but does not contest those charges. Defendant was charged with assault with intent to do great bodily harm less than murder, MCL 750.84, but the district court dismissed the charge at the preliminary examination. We affirm.

## I. FACTUAL BACKGROUND

This matter arises from an incident that occurred on March 11, 2018, at Ottava Via in Detroit. Defendant and his codefendant, Frederick Person,[2] are both Detroit police officers. On March 11, 2018, defendant, Person, Gregory Pace, Kennan Jefferson, a man named Phernell, and a man named Tim, were hired by the owner of Ottava Via to provide "access control" to patrons, which generally involved checking IDs and distributing wristbands to patrons who were 21 years

---

[1] *People v Leach*, 933 NW2d 284 (Mich, 2019).

[2] Defendant and Person were codefendants at the preliminary examination. Person is not part of the instant appeal.

or older. However, the owner of the Ottava Via instructed Pace to turn away patrons who appeared to be too drunk to come inside.

Pace and Person were working the front-door entrance around 2:30 p.m. when defendant told Pace that "he might need help [inside] escorting a gentleman out of the bar." When Pace walked inside Ottava Via, he saw Michael Karpovich, the victim, lying on the ground. Karpovich was unresponsive, and a pool of blood began to form around his body. The exact details of the altercation between defendant and Karpovich were not provided at the preliminary examination, but it appears that defendant struck Karpovich in such a way that Karpovich fell to the floor and was rendered unconscious. After medical personnel took Karpovich out on a stretcher, Pace returned to the front-door entrance to resume checking IDs and distributing wristbands.

Detroit Police Officer Marcus Harris II, and his partner, Officer Terry White, were dispatched to Ottava Via regarding an intoxicated person that required medical attention. When Officers Harris and White arrived at Ottava Via, medical personnel were already treating Karpovich, who was now lying unconscious on a stretcher inside the ambulance. Officer Harris spoke with Person and Pace at the front-door entrance of Ottava Via. Person told Officer Harris, "[W]e threw . . . [Karpovich] out of the bar because he was highly intoxicated." After speaking with Pace and Person, Officers Harris and White left Ottava Via and went to the hospital where Karpovich was taken.

The team of men working at Ottava Via on March 11, 2018, including defendant, started a group chat on their cellphones. On March 10, 2018, defendant sent the group chat a text message, stating: "Reminder Reminder!! Tomorrow March 11, 2018 Sunday from 11-7pm at 1400 Michigan Ave, Ottava-Via. We will be the security team for their St. Patrick's Day Parade and Party, they celebrate a week before the actual event. This time we will all be at the same spot. Thanks Team[.]" Text messages from the group chat discussed what the men would wear on March 11, 2018, and where the men could find parking spots. After the incident with Karpovich, Jefferson texted the group chat about needing a mop to clean up Karpovich's blood.

Detroit Police Detective Sarah Markel performed cellphone extractions on the six cellphones belonging to the men working at Ottava Via on March 11, 2018, including the cellphones of defendant, Person, and Jefferson. Defendant's and Person's cellphone numbers were listed as members in the group chat. A total of 32 text messages were exchanged in the group chat between the men working at Ottava Via on March 11, 2018. However, when Detective Merkel analyzed defendant's and Person's cellphones, the text messages from the March 11, 2018 group chat were missing despite records showing that their cellphones were members and participants in the group chat. The group chat text messages were found on the four other cellphones that Detective Merkel analyzed. Detective Markel believed that the group chat text messages were missing from defendant's and Person's cellphones because they were deleted. Although Detective Markel testified that some of the text messages could be missing if defendant and Person never received them, that scenario seemed unlikely given that defendant and Person both sent text messages to the group chat.

At the preliminary examination, Jefferson testified that he did not believe that he provided security services because security, in his opinion, focused more on preventing theft or

danger to patrons. Jefferson, who has a full-time job with a security company, defined their duties on March 11, 2018 as "access control." Defendant did not have a license in the state of Michigan to engage as a security guard or hold a license to own a security-guard company.

The district court bound defendant over on charges of tampering with evidence, engaging as a security guard without a license, aggravated assault, and willful neglect of duty. In the circuit court, defendant filed a motion to quash the charges of engaging as a security guard without a license and tampering with evidence. The circuit court denied defendant's motion, holding that, on the basis of the probable-cause standard, the district court did not abuse its discretion when it bound defendant over on charges of tampering with evidence and engaging as a security guard without a license. Defendant filed an interlocutory application for leave to appeal in this Court, which was denied. *People v Leach*, unpublished order of the Court of Appeals, entered May 30, 2019 (Docket No. 348608). Defendant then filed an application for leave to appeal in the Supreme Court. In lieu of granting defendant's application for leave to appeal, the Supreme Court remanded the matter to this Court for consideration as on leave granted. *People v Leach*, 933 NW2d 284 (Mich, 2019).

## II. MOTION TO QUASH

Defendant argues that the district court abused its discretion by finding probable cause to believe that defendant tampered with evidence and engaged as a security guard without a license. We disagree.

This Court reviews a district court's decision to bind over a defendant for an abuse of discretion. *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). "An abuse of discretion occurs when the district court's decision falls outside the range of principled outcomes." *Id.* (quotation marks and citations omitted). A trial court's decision to deny a motion to quash is also reviewed for an abuse of discretion. *People v Lemons*, 299 Mich App 541, 545; 830 NW2d 794 (2013). "However, to the extent that a lower court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Id.* (quotation marks and citation omitted).

"The purpose of a preliminary examination is to determine whether probable cause exists to believe that a crime was committed and that the defendant committed it." *People v Lowery*, 274 Mich App 684, 685; 736 NW2d 586 (2007). The threshold for evidence sufficient to bind over a defendant is far lower than what is required to convict a defendant of the crime at trial. *People v Greene*, 255 Mich App 426, 443-444; 661 NW2d 616 (2003). Probable cause can be established by circumstantial evidence and reasonable inferences arising from that evidence. *Id.* at 444. And probable cause is said to exist when there is a "quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Anderson*, 501 Mich 175, 183; 912 NW2d 503 (2018), quoting *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). Generally, probable cause to bind over a defendant can exist even if the district court has some reasonable doubt that the defendant committed the crime. *Anderson*, 501 Mich at 185-186, quoting *Yost*, 468 Mich at 133. That is so because the "gap between probable cause and guilt beyond reasonable doubt is broad," which is why finding guilt beyond a reasonable doubt is the factfinder's responsibility. *Yost*, 468 Mich at 126.

## A. ENGAGING AS AN UNLICENSED SECURITY GUARD

Defendant first challenges the district court's decision to bind him over on the charge of engaging as a security officer without a license, arguing that the prosecution failed to proffer evidence that he was working as a private security guard or as a security business on March 11, 2018.

Defendant was charged under MCL 338.1053, which provides in relevant part:

(1) Unless licensed under this act, a sole proprietorship, firm, company, partnership, limited liability company, or corporation shall not engage in the business of security alarm system contractor, private security guard, private security police, private college security force, patrol service, or an agency furnishing those services. A person, firm, company, partnership, limited liability company, or corporation shall not advertise its business to be that of security alarm system contractor, security alarm system agent, private security guard agency, or an agency furnishing those services without having first obtained from the department a license to do so for each office and branch office to be owned, conducted, managed, or maintained for the conduct of that business.

A "private security guard" is defined as "an individual or an employee of an employer who offers, for hire, to provide protection of property on the premises of another, and includes an employee of a private college security force." MCL 338.1052(1)(g). And a "security business" includes "a person engaged in offering, arranging, or providing" private security guard services. MCL 338.1052(1)(*l*)(*ii*).

The prosecution presented sufficient evidence from which the district court could conscientiously entertain a reasonable belief that defendant was engaged in providing private security guard services without a license. Defendant claims that there was no evidence that he acted as a security business, but a security business can be a single person engaging in private security guard services. MCL 338.1052(1)(*l*)(*ii*). The statute does not require an individual to "own" any business; rather, MCL 338.1052(1)(*l*) is focused on the services engaged in by a person. The fact that defendant does not have a business entity registered in his name is only relevant to the extent that it is evidence that defendant does not have a licensed private security business. And although Detroit Police Sergeant Todd Eby failed to bring his report to the preliminary examination, he testified that he searched the police department's database as well as the Licensing and Regulatory Affairs (LARA) website and could not find a private security guard license under defendant's name.

The prosecution presented evidence that defendant and five other men were hired by the owner of Ottava Via to do more than check IDs and hand out wristbands to patrons trying to enter the bar. Pace testified that the owner of Ottava Via told him and Person to decline entry to patrons who appeared to be intoxicated, indicating that the duties of the six men involved more than just checking IDs and handing out wristbands. Moreover, defendant clearly felt that he had the authority to physically evict Karpovich because he was too drunk, suggesting that he was

hired to protect Ottava Via from damage potentially inflicted by intoxicated patrons. In fact, defendant sent a reminder text message to the group chat, stating that the men would be the "security team" for Ottava Via on March 11, 2018. The prosecution presented evidence that defendant recruited the men to work at Ottava Via, was responsible for paying the men, and had some authority to relocate the men to different posts throughout the day. Pace also testified that defendant asked him for help to evict Karpovich. The prosecution presented evidence from which the district court could reasonably infer that defendant and the five men—who were all dressed alike in black—were hired to provide protection to Ottava Via on March 11, 2018, by ensuring that drunk patrons did not enter the bar and that drunk patrons were promptly removed from the premises. Accordingly, the district court did not abuse its discretion when it bound defendant over on the charge of engaging as a security guard without a license.

## B. TAMPERING WITH EVIDENCE

Defendant argues that the prosecution presented insufficient evidence to support the district court's finding that there was probable cause that he tampered with evidence. We disagree.

Defendant was charged under MCL 750.483a(6)(a), which lists the possible punishments for a violation of MCL 750.483a(5). MCL 750.483a(5) states:

(5) A person shall not do any of the following:

(a) Knowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding.

(b) Offer evidence at an official proceeding that he or she recklessly disregards as false.

MCL 750.483a(11)(a) broadly defines an "official proceeding" as "a proceeding heard before a legislative, judicial, administrative, or other governmental agency or official authorized to hear evidence under oath, including a referee, prosecuting attorney, hearing examiner, commissioner, notary, or other person taking testimony or deposition in that proceeding." The prosecution charged defendant under MCL 750.483a(5)(a), alleging that defendant intentionally deleted the text messages in the March 11, 2018 group chat in an effort to prevent those text messages from being used against him in a future legal proceeding.

At the preliminary examination, the prosecution presented evidence that defendant and the five other men working at Ottava Via on March 11, 2018 were in a group chat. Defendant's cellphone number was listed in the group chat. However, when Detective Merkel's analyzed defendant's cellphone, the text messages from the March 11, 2018 group chat were missing. Of the six cellphones that Detective Merkel analyzed, the group chat was found on only four cellphones. Text messages from the group chat were only missing from Person's and defendant's cellphones. According to Detective Markel, it was unlikely that the text messages were missing from defendant's cellphone because of some cellular error because defendant sent text messages to the group chat. Thus, there was sufficient evidence to allow the district court to reasonably infer that defendant concealed, destroyed, or otherwise tampered with the text messages in the March 11, 2018 group chat by deleting the conversation from his cell phone.

Several text messages in the group chat specifically mentioned the unauthorized work performed by the team on March 11, 2018 at Ottava Via. In the group chat, the men agreed to wear black on March 11, 2018, while working. Defendant sent a text message to the group chat explicitly stating that the men would be the "security team" for Ottava Via. Defendant is a police officer and likely knew that he needed a license to provide private security services. The district court could conscientiously entertain a reasonable belief that defendant knew that the text messages in the group chat could be used as evidence that he was illegally providing security services to Ottava Via.

Defendant argues that there was no evidence that he knew that the text messages in the March 11, 2018 group chat would be used in a future criminal proceeding. Defendant claims that the text messages could have been deleted well before any investigation into the March 11, 2018 incident began, and therefore, defendant could have deleted the text messages without knowing that they would be used in a future official proceeding. However, Karpovich was injured so badly from his altercation with defendant that he was left unconscious on the bar floor with a pool of blood around his body. Shortly after the ambulance arrived, two uniformed police officers were dispatched to Ottava Via and spoke with Pace and Person regarding the incident with Karpovich. An investigation into the incident with Karpovich began when Officers Harris and White were dispatched to Ottava Via, and text messages in the group chat were exchanged well after Officers Harris and White left Ottava Via. Given that defendant is a police officer and was the only person involved in the altercation with Karpovich, it is reasonable to believe that defendant was aware of a future official proceeding in which he would be involved. For that matter, any person involved in such a violent altercation in the manner that defendant was involved would reasonably suspect an investigation and possible legal proceeding resulting from the incident. Accordingly, the district court could conscientiously entertain a reasonable belief that, when defendant deleted the March 11, 2018 text messages, he did so with the knowledge that the text messages could be used in a future legal proceeding.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens